UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 09-cv-00951-WYD

CATHERINE VANDUSEN ZAPIEN,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

## ORDER

THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's claim for disability insurance benefits under the Social Security Act ["the Act"]. For the reasons stated below, this case is reversed and remanded to the Commissioner for further fact finding.

I.     BACKGROUND

Plaintiff was born in July 1957. (Transcript ["Tr."] 127.) She has a high school education and completed one year of college. (*Id.* 161.) Plaintiff worked in the past as a telemarketer, order clerk, retail salesclerk, waitress, and certified nurse aide. (*Id.* 132, 163.) Plaintiff alleged that she became disabled when she was 46 years old because of "diabetes, fibromyalgia, diabetic neuropathy, [and] heart attacks". (*Id.* 131.)

In June 2005, Plaintiff filed applications for disability insurance benefits, for which she was insured through June 30, 2006. (Tr. 92-100.) Her applications were denied. (*Id.* 24, 29.) Plaintiff requested a hearing before an ALJ, which was held on July 24,

2007.  (*Id.* 912-49.)  On November 30, 2007, the administrative law judge ["ALJ"] issued a decision denying Plaintiff's claim.  (*Id.* 12-22.)

The ALJ first found that Plaintiff met the insured status requirements of the Act through June 30, 2006.  (Tr. 17.)  He also found that Plaintiff did not perform any substantial gainful activity from September 21, 2002, her alleged onset of disability date, through June 30, 2006, her date last insured.  (*Id.*)  At step two, the ALJ found that Plaintiff had severe impairments of possible transient ischemic attacks ["TAIs"], diabetes, hypertension, and bilateral knee pain.  (*Id.* 17-18.)  At step three, he found that Plaintiff's condition did not meet or equal the requirements of a listed impairment.  (*Id.* 18.)

Despite her impairments, and through her date last insured, the ALJ found that Plaintiff retained the residual functional capacity ["RFC"] to perform light work with the following additional limitations: "occasional bending, stooping, crouching, crawling, balancing, kneeling; no climbing ramps and stairs; no climbing ladders, ropes or scaffolds; avoid hazards and work around unprotected heights."  (Tr. 18-19.)  At step four, the ALJ found that Plaintiff's RFC did not preclude her from performing her past work as a telemarketer or order clerk.  (*Id.* 21-22.)  Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act from September 21, 2002, her alleged onset of disability date, through June 30, 2006, her date last insured.  (*Id.* 22.)

On March 9, 2009, the Appeals Council denied Plaintiff's request for review of the ALJ's decision.  (Tr. 4-7.)  The ALJ's decision became the final administrative decision, and this case is ripe for judicial review pursuant to 42 U.S.C. § 405(g).

II. ANALYSIS

A. Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "It requires more than a scintilla of evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

Plaintiff argues that the ALJ's RFC determination was not based upon substantial evidence and that the ALJ applied incorrect legal standards. She also argues that the ALJ's credibility determination was not based on substantial evidence. Finally, Plaintiff argues that the ALJ's rejection of David Benson, Ph.D's opinion was not based on substantial evidence and that the ALJ did not properly consider certain impairments in the step two analysis. Plaintiff requests that the Court issue a favorable decision granting benefits or, in the alternative, reverse and remand the Commissioner's

decision. For the reasons discussed below, this case is reversed and remanded to the Commissioner for further fact finding.

> B. <u>Whether the ALJ's Decision is Supported by Substantial Evidence</u>
>
> 1. <u>The RFC Determination and Weighing of the Medical Evidence</u>

While the ALJ discussed the opinions of Dr. Benson and Dr. Christoff (Tr. 20-21), I agree with Plaintiff that he never expressly stated what evidence he relied on in reaching his RFC. Further, I find that the ALJ erred in not making clear the weight given to the opinions of Dr. Benson and Dr. Christoff and the reasons for that weight. *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).

In that regard, the ALJ stated that he gave Dr. Benson's opinion dated April 13, 2004, "some weight" concerning Plaintiff's "ability to sustain work in a competitive work environment based on her 'general condition" (Tr. 20), but did not explain what findings he gave "some weight" to or how this impacted his RFC determination. Thus, I am unable from the record to determine what findings, if any, of Dr. Benson he gave weigh to. I also find that it is impossible to determine from the record what the ALJ meant when he stated he gave "little weight" to other findings of Dr. Benson as well as the findings of treating physician Dr. Christoff. (*Id.*) It appears that he gave the opinions no weight, although this is not explicitly stated. If he did give weight to any of Dr. Christoff's findings, this also is not stated in the record.

Further, while the ALJ's RFC findings appear to be generally consistent with what the non-testifying medical expert Dr. Morse testified to at the hearing, he does not state that Dr. Morse's testimony is the basis of his findings. Also, while he relied on the

March 26, 2004, opinion of treating physician J. Robert Tyler, DO to discredit Dr. Christoff, he also does not state that he relied on Dr. Tyler's opinions. Thus, I am left to speculate as to what specific evidence was relied on by the ALJ in determining the RFC. This is legal error.

Social Security Ruling 96-8P directs that the RFC "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations" . . . the ALJ must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved". From this, it is axiomatic that the ALJ must explain what evidence he relies on to support his RFC finding. *Haddock v. Apfel*, 196 F.3d 1084, 1088-1089 (10th Cir. 1999). The failure to do so requires a remand. *Southard v. Barnhart,* 72 Fed. Appx. 781, 784-785 (10th Cir.2003); *Moon v. Barnhart*, No. 04-7130, 2005 WL 3446576, at *2-3 (10th Cir. 2005).

The ALJ also did not conduct a proper analysis of whether the treating sources such as Drs. Tyler and Christoff were entitled to controlling weight. This should have been the starting point for the RFC determination. An ALJ is "required to give controlling weight to a treating physician's opinion about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, and any physical or mental restrictions, if 'it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.'" *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995) (quotation omitted). "A treating physician's opinion must be given substantial weight unless good cause is shown to

disregard it." *Goatcher v. United States Dep't of Health and Human Servs.*, 52 F.3d 288, 289-90 (10th Cir. 1994).

The treating physician's opinion is given particular weight because of his unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). The ALJ must give specific, legitimate reasons for disregarding a treating physician's opinion that a claimant is disabled." *Goatcher*, 52 F.3d at 290.

Even if an ALJ decides that a treating physician's opinions are not entitled to controlling weight, this does not allow him to reject their opinions outright. *Langley*, 373 F.3d at 1120. Instead, the physician's opinions are "'still entitled to deference and must be weighed using all of the [relevant] factors.'" *Id.* (quotation omitted). These factors are set out in 20 C.F.R. § 404.1527(d). The ALJ also did not engage in this weighing process regarding the opinions of the treating sources.

From the foregoing, it is clear that the ALJ did not follow the treating source rules. "The 'failure to apply the correct legal standard[s] or to provide th[e] court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal.'" *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotation omitted). Further, where an ALJ fails to articulate the weight given to a treating physician's opinion, the court cannot meaningfully review the ALJ's determination. *Robinson*, 366 F.3d at 1083. In *Robinson*, the court found error where

"it [wa]s obvious from the ALJ's decision that he did not give [a doctor's] opinion controlling weight" but "the ALJ never expressly stated that. . . ." *Id.* at 1083.

Further, the ALJ omitted without explanation significant non-exertional impairments opined to by treating physician Dr. Tyler without explanation. For example, Dr. Tyler opined that Plaintiff could never reach above the shoulders and could only sometimes grasp, perform finger manipulations and use the head/neck in a stable or rotating position. (Tr. 291.) An ALJ cannot omit impairments from an opinion or report that he relies on without explanation: *See Wiederholt v. Barnhart*, No. 03-3251, 2005 WL 290082, *5 (10th Cir. Feb, 8, 2005); *Confere v. Astrue*, No. 06-4217, 2007 WL 1196520, at *3 (10th Cir. April 24, 2007). Moreover, if the ALJ did not rely on Dr. Tyler's opinions, he erred in not giving reasons for this.

I also agree with Plaintiff that the ALJ erred in seemingly giving no weight to the cognitive impairments opined to by Dr. Benson in his consultative psychological evaluation.[1] As noted by the Commissioner, Plaintiff's IQ test results performed by Dr. Benson showed that she performed in the low average range of intellectual functioning. (Tr. 277-79.) Dr. Benson found that Plaintiff exhibited a poor vocabulary, a low fund of general information, difficulty with common-sense reasoning, and a relatively poor working memory. (*Id.* 282.) When assessing Plaintiff's potential for vocational rehabilitation, Dr. Benson concluded that Plaintiff "would be more effective in tasks which are more performance oriented than tasks which have a verbal emphasis," and

---

[1] Again, the ALJ erred because he did not actually state what weight he gave to these opinions. (Tr. 20.)

that she would "learn most effectively through experimental instruction". (*Id.*)  Tests showed that Plaintiff read, spelled, and performed arithmetic at the fourth to sixth grade levels, which were "all within a range which would be expected given her performance on [IQ testing]"  (*Id.* 283).

Dr. Benson diagnosed Plaintiff with poly-substance dependence, in remission; dysthymia; characteristics of attention deficit disorder; a probable cognitive disorder; and dependent, self-defeating, and borderline personality traits.  (Tr. 283.)  He opined that Plaintiff would likely have difficulty obtaining and maintaining employment, and that "a work adjustment placement would be helpful to her".  (*Id.* 284-85.)  He also found that Plaintiff had a number of cognitive deficits including, among other things, trouble with memory, attention, and concentration and difficulty interpersonally.  (*Id.* 281.)  He also stated as to Dr. Benson's opinions regarding Plaintiff's cognitive disfunction and mental impairments:

> [H]is emphasis of the claimant's cognitive dysfunction is not indicated in other treating and examining source records and is not reflected by the WAIS-III scores of VIQ of 75; PIQ of 91; and FSIQ of 80. . . . Mental status exams in the rest of the record do not indicate significant cognitive deficits. . . . Further, his reliance on his 'obvious emotional distress' is misplaced. . . Progress notes do not reflect consistent emotional problems.  It appears that she does have mood swings that are triggered by her fluctuating blood sugar levels, which in turn result from her admitted noncompliance with the treatment protocol.

(*Id.*)

I find that the ALJ's reasons for not giving weight to the Dr. Benson's opinions regarding Plaintiff's cognitive deficits, including Dr. Benson's opinion that Plaintiff would likely have difficulty obtaining and maintaining employment, are not supported by

-8-

substantial evidence and/or are improper lay opinions or judgments. For example, the ALJ disregarded Dr. Benson's detailed opinion and findings from the testing of Plaintiff based on the ALJ's improper lay judgment about what he thought the IQ tests reflected. (Tr. 20.) The ALJ also rejected Dr. Benson's opinions because he thought that the opinion was based on Plaintiff's mood swings, which is not supported by Dr. Benson's report, and because Plaintiff's mood swings were triggered by her fluctuating blood sugar levels, which he did not document through record evidence. (*Id.*) Generally, an ALJ is not entitled to reject a doctor's opinions without adequate justification or to substitute his own medical judgment for that of medical professionals. *Winfrey v. Chater*, 92 F.3d 1017, 1021-22 (10th Cir. 1996). Further, the ALJ discounted Dr. Benson's findings of emotional distress, even though these were specific medical findings. *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). An ALJ errs in rejecting such findings in the absence of conflicting evidence. *Id.*[2]

The ALJ also failed to consider that Dr. Benson is the only provider who did a thorough assessment of Plaintiff's psychological functioning. As such, he appears to be in a better position to assess her mental functioning than other providers, particularly those who merely reviewed medical records. While the ALJ cites to mental status exams in the record to reject Dr. Benson's opinions, he does not describe any exams that actually tested for cognitive deficits. The few occasions during which a physician,

---

[2] It is also unclear how Plaintiff's IQ scores (verbal IQ score of 75, putting her in the borderline range of intellectual functioning and full scale IQ of 80, putting her in the low average range of functioning) are inconsistent with the cognitive dysfunction found by Dr. Benson.

not a mental health doctor, found that Plaintiff had fair judgment and insight or had an appropriate mood and effect is hardly an indication that she does not suffer from a cognitive dysfunction and/or depression. Indeed, the medical records are replete with acknowledge of her mental health impairments. (Tr. 288, 290, 304, 310, 316, 566, 761-62, 783, 911[3].) Finally, findings regarding the severity of a mental impairment as noted by the ALJ (Tr. 21) are different from an assessment of a claimant's ability to do mental/cognitive tasks. Thus, I find that the reasons given by the ALJ for rejecting Dr. Benson's opinions are not supported by substantial evidence.

The ALJ also erred in not considering Dr. Benson's opinions on Plaintiff's ability to work. "[O]pinions from any medical source on issues reserved to the Commissioner must never be ignored." *Miller v. Barnhart*, No. 01-2231, 2002 WL 1608452, at *3 (10th Cir. July 22, 2002). "The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner." *Id.*

Finally as to Dr. Benson, the ALJ failed to consider the fact that Dr. Benson's findings regarding significant cognitive deficits were substantiated by Dr. Christoff's findings. Dr. Christoff found that Plaintiff would have noticeable difficulty (either more than 10 or 20% of the work day or work week) with (1) understanding and remembering

---

[3] The last two cites to the record relate to medical evidence dated after Plaintiff's Date Last Insured of June 30, 2006. However, "evidence bearing upon an applicant's condition subsequent to the date upon which the earning requirement was last met is pertinent evidence in that it may disclose the severity and continuity of impairments existing before the earning requirement date or may identify additional impairments which could reasonably be presumed to have been present and to have imposed limitations as of the earning requirement date." *Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476, 479 (10th Cir. 1993).

very short, simple instructions, (2) understanding and remembering detailed instructions, (3) maintaining attention and concentration, (4) maintaining attendance, (5) working in coordination with or proximity to others, and (6) completing a normal work day and week without interruptions from psychologically based symptoms. (Tr. 761.)

The ALJ appeared to reject the above findings of Dr. Christoff on the basis that he was not a mental health practitioner and that his opinions were not consistent with other sources concerning the nature and severity of Plaintiff's mental condition. (Tr. 21.) I find that this is error. Dr. Christoff began treating Plaintiff in May 2005 for both physical and mental impairments as well as pain. As a treating practitioner, he had a unique perspective to consider and evaluate Plaintiff's impairments in combination and see how they affected Plaintiff's cognitive/emotional functioning.

Further, Dr. Christoff's evaluation was not directed at the diagnosis or assessment of the severity of a mental impairment such as depression but at Plaintiff's ability to perform mental and cognitive tasks such as understanding, memory, concentration and persistence. The ALJ has no evidence other than his own lay judgment to assume that Dr. Christoff is not qualified to make such an assessment. At the very least, the ALJ should have contacted Dr. Christoff regarding this issue. *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002). Finally, the fact that Dr. Christoff is not a mental health expert is not a factor to be used in determining whether or not to give the opinion of a treating physician controlling weight.[4]

---

[4] To the extent the Commissioner argues that the report by Dr. Christoff could not be relied on because it was a "check-the-box" form, I disagree. This is not a case where an examining or nonexamining physician prepared such a form and did not provide any bases for his or her opinions.

Based on the foregoing, I find that the ALJ did not properly weigh or consider the opinions of either Dr. Benson or Dr. Christoff regarding Plaintiff's deficits on mental tasks. Further, the ALJ erred in not following the treating source rules and in not properly explaining what evidence supported his RFC findings. Accordingly, a remand on this issue is appropriate to the ALJ.

On remand, the ALJ must keep in mind that "[t]he opinion of an examining physician or psychologist is generally entitled to less weight than that of a treating physician or psychologist, and the opinion of an agency physician or psychologist who has never seen the claimant is generally entitled to the least weight of all." *Robinson*, 366 F.3d at 1084. [W]hen a treating [source's] opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other [sources'] reports to see if they outweigh the treating [source's] report, not the other way around.'" *Valdez v. Barnhart*, No. 01-1531, 2003 WL 366751 at *2 (10th Cir. Feb. 20, 2003) (quoting *Goatcher*, 52 F.3d at 290). "If an ALJ intends to rely on a nonexamining source's opinion, he must explain the weight he is giving it." *Robinson*, 366 F.3d at 1084 (citing 20 C.F.R. § 416.927(f)(2)(ii)). To the extent the ALJ relied on the opinions of Dr. Morse or Dr. Dyde, he did not do this.

Also on remand, the ALJ must articulate and adequately "assess the nature and extent of [Plaintiff's] mental limitations" to enable a correct and complete determination

---

Instead, Dr. Christoff was a treating physician with a history of treatment of Plaintiff . *See Anderson v. Astrue*, No. 05-4305, 2009 WL 886237, at *6 (10th Cir. April 3, 2009). Further, the Commissioner's arguments that were not relied on by the ALJ as a basis for his decision will not be considered. The decision must be based on the reasons given by the ALJ, and must stand or fall on this basis. *See Knipe v. Heckler*, 755 F.2d 141, 149 n. 16 (10th Cir. 1985).

of her "RFC for work activity on a regular and continuous basis." 20 C.F.R. § 404.1545(b). Further, the ALJ should address whether Plaintiff can "'focus long enough to complete tasks in a timely fashion; and to adapt to stressful circumstances without either withdrawing from the situation or experiencing increased signs and symptoms of the claimant's mental disorder.'" *Washington*, 37 F.3d at 1440 (quotation omitted). In other words, the ALJ may not focus merely on whether Plaintiff can physically perform certain jobs; he must also determine whether Plaintiff "'can *hold* whatever job [s]he finds for a significant period of time.'" *Id*. at 1442 (emphasis in original) (quotation omitted).

The Commissioner argues, however, that any error was harmless. I disagree. Had the ALJ properly considered the medical evidence, including the findings of the treating physicians and the mental impairments, the RFC may well have been substantially more limited and the vocational expert could have found that Plaintiff could not perform her past relevant work as a telemarketer and order clerk. Indeed, Plaintiff's ability to do any work may have been impacted.

      2.     <u>Whether the ALJ Erred at Step Two</u>

Case law "prescribes a very limited role for step two analysis." *Lee v. Barnhart*, No. 03-7025, 2004 WL 2810224, at *2 (10th Cir. Dec. 8, 2004). "Step two is designed 'to weed out at an early stage of the administrative process those individuals who cannot possibly meet the statutory definition of disability.'" *Id*. (quotation omitted). "While 'the mere presence of a condition or ailment' is not enough to get the claimant past step two, *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir.1997), a claimant need

only make a 'de minimus' showing of impairment to move on to further steps in the analysis." *Id.* (quoting *Langley*, 373 F.3d at 1123).

In this case, my remand based on the failure to properly weigh the medical evidence will also require a new analysis of the claims beginning at step two. This must include an adequate assessment of all of Plaintiff's impairments, including but not limited to her mental impairments, carpal tunnel syndrome, fibromyalgia, and alleged cognitive disorder. While the ALJ referenced many of Plaintiff's impairments, the record was unclear as to why he found some impairments were severe and others were not severe. Further, he did not even discuss some impairments noted in the record, such as fibromyalgia. This is also an error that requires remand.

I also find that the ALJ erred at step two and in the RFC in considering Plaintiff's impairments only individually and not in combination. The regulations state that if a favorable decision cannot be reached on consideration of just the person's physical impairments or mental impairments, then the ALJ is required to carefully consider the person's combination of physical and mental impairments, including impairments found not to be severe. 20 C.F.R. § 404.1523. The ALJ applies the wrong standard when he considers only a claimant's impairments individually to determine whether they are sufficiently severe to limit her ability to do basic work activities. *Carpenter v. Chater*, 537 F.3d 1264, 1266 (10th Cir. 2008). Thus, on remand, "'[a]t step two, the ALJ must consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two].'" *Id.* at 1123-24 (quotation and internal quotation marks omitted).

### 3. Whether the ALJ Erred in His Credibility Determination

I also find errors with the credibility determination which must be corrected on remand. Plaintiff argues that the ALJ's decision misconstrued her testimony at the hearing. She asserts that the ALJ's numerous statements in his decision prove to be inconsistent with the hearing testimony and the record shows that the ALJ's credibility determination is not based on substantial evidence. Plaintiff also asserts that the ALJ improperly found Plaintiff not entirely credible based on minimal activities that Plaintiff was able to do.

I agree with Plaintiff that the ALJ selectively applied Plaintiff's testimony as a basis to find that her complaints as to the alleged severity of her impairments and pain were not credible. For example, he states that she is "planning all the details of her upcoming wedding" and that "she was able to go on a three week vacation with her family". (Tr. 19.) However, this is inconsistent with Plaintiff's actual testimony. Plaintiff did not state that she is planning all of the details of her wedding, but that she thought about where she might have a wedding and approximately how many people may attend if she does in fact have a wedding. (Tr. 936-37.) The actual wedding date has not even been set. (*Id.*)

Further, while Plaintiff testified at the hearing that she had not seen her therapist for "the last three" weeks because Plaintiff was out of town on vacation (Tr. 923), she later made clear in her testimony that she was not on vacation for the entire three weeks. (*Id.* 926; *see also* 76-77.) The ALJ may not selectively apply the evidence. *See Arrington v. Apfel*, No. 98-7099, 1999 WL 446013, at *8-9 (10th Cir. July 1, 1999)

('[i]n evaluating plaintiff's testimony and comparing it with 'prior statements and other evidence,' . . ., the ALJ was selectively choosing from the record those statements he wished to rely on without properly considering all the evidence. . . . [w]e have repeatedly held that an ALJ may not engage in a selective evidentiary review") (citing cases).

The ALJ also found that Plaintiff was not entirely credible and that her activities "belie her allegation of disability." (Tr. 19.) He referred to the fact that Plaintiff attends and sponsors AA meetings, drives, runs errands, takes her children to school, and makes appointments. (*Id.*) Her actual testimony, however, was that these activities depended on how she was feeling that day and that four to five days a week she took two to four hour naps. (*Id.* 934-35.) Again, the ALJ selectively applied the evidence to make it appear that Plaintiff's activities were much more extensive than the testimony supported. On remand, the ALJ must keep in mind that he "may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain." *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993); *see also Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984).

The ALJ also found as a basis for his credibility finding that Plaintiff's physicians have not opined that she is totally and permanently disabled from any work. (Tr. 20.) In so finding he ignored the physical capacity evaluation of Dr. Christoff which found that Plaintiff was limited to zero hours of work activity in an eight hour day (*id.* 766) and Dr. Benson's opinion that it would be very difficult for Plaintiff to work. (*Id.* 284-85.)

I also find that ALJ did not conduct a proper analysis of Plaintiff's pain and fatigue. First, he discounted the medical evidence documenting pain and fatigue due in

-16-

part to the extensiveness of Plaintiff's activities, which I find is not supported by substantial evidence as stated above.

The ALJ also discounted Plaintiff's complaints of pain because she did not exhibit "any significant disuse muscle atrophy, loss of strength, or difficulty moving", "[p]hysical exams have been unremarkable" except as to certain impairments, and because the record did not show weight loss due to loss of appetite or sleep deprivation due to pain. (Tr. 19-20.) However, "pain and fatigue are not necessarily identifiable or measurable by objective diagnostic tests." *Boyer v. Astrue*, No. 07-cv-00994-RPM, 2009 WL 353523, at *1 (D. Colo. Feb. 12, 2009). Also, where the record evidence documents pain as genuine, an ALJ cannot reject assertions of pain based only on a claimant's demeanor. . . ." *Teter v. Heckler*, 775 F.2d 1104 (10th Cir. 1985).

Moreover, there is substantial objective evidence in the record documenting or supporting Plaintiff's complaints of pain as well as fibromyalgia, a chronic condition known to cause pain and fatigue, *Moore v. Barnhart*, No. 03-3243, 2004 WL 2634571, at *8 (10th Cir. Nov. 19, 2004). (*See, e.g.,* Tr. 288, 290, 300, 303, 304, 307, 742, 745, 759, 766.) As explained by the Tenth Circuit, "objective medical evidence of disabling pain need not consist of concrete physiological data alone but can consist of a medical doctor's clinical assessment as well. . . ." *Gatson v. Bowen*, 838 F.2d 442, 447 (10th Cir. 1988); *see also Cox v. Apfel*, 160 F.3d 1203, 1208 (8th Cir. 1998) ("consistent diagnosis of chronic pain syndrome can serve as an objective basis for pain").[5]

---

[5] There is also no evidence or legal basis for the ALJ to assume that loss of appetite or sleep deprivation must exist in order for a person to be in pain. In any event, the record does document fatigue and trouble sleeping. (Tr. 309, 316, 566, 740.)

Finally, I find that the ALJ did not discuss all the appropriate factors relevant to pain and fatigue. *See Luna v. Bowen*, 834 F.2d 161, 163-66 (10th Cir. 1987); *Thompson*, 987 F.2d at 1489. For example, the record shows that Plaintiff was prescribed many different medications. (*See, e.g.*, Tr. 297.) She was also diagnosed with fibromyalgia, a chronic pain syndrome, and repeatedly went to doctors complaining of pain. (*Id.* 288, 290, 292, 300, 307, 316, 565, 742, 744-45, 752, 774.) *See Carpenter*, 537 F.3d at 1268 ("[t]he ALJ's purported pain analysis is improper boilerplate because he merely recited the factors he was supposed to address and did not link his conclusions to the evidence or explain how Mrs. Carpenter's repeated attempts to find relief from pain, and all the drugs she has been prescribed for pain, resulted in a conclusion that she is unlimited in any regard by pain). In this case, the ALJ did not even recite the factors he was supposed to address.

In short, I find that the credibility findings are not supported by substantial evidence and/or are based on improper lay judgments. The Tenth Circuit has made clear that "'[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted).

    4.    <u>Whether the ALJ Erred at Step Four</u>

I also agree with Plaintiff that the ALJ erred when he stated in his decision that he asked the vocational expert to note and explain disagreements, if any, with the provisions of the Dictionary of Occupational Titles ["DOT"] when the record does not actually reflect this. This must also be addressed on remand, as such questioning is

required by law. *See Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999) ("the ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability"); SSR 00-4p, 2000 WL 1898704, at *4 (2000).

        5. <u>The Appropriate Remedy</u>

Finally, I reject Plaintiff's request for a remand with an immediate award of benefits. Instead, the appropriate remedy is a remand of this case to the Commissioner for further fact-finding and decision-making consistent with this Order. *See Sorenson v. Bowen*, 888 F.2d 706, 713 (10th Cir. 1989) (outright reversal and remand for an immediate award of benefits is appropriate only when additional fact finding would serve no useful purpose).

III.    <u>CONCLUSION</u>

Based upon the errors described above, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for further fact finding pursuant to sentence four in 42 U.S.C. § 405(g).

Dated September 1, 2010

                                      BY THE COURT:

                                      s/ Wiley Y. Daniel
                                      Wiley Y. Daniel
                                      Chief United States District Judge